{¶ 1} C. C. appeals from the order of the juvenile court adjudging him delinquent in connection with two complaints of rape. For the reasons set forth below, we affirm.
 {¶ 2} The State of Ohio filed delinquency complaints against C. C. which alleged that he raped A. E. and Y. E., two four-year-old twins.
 {¶ 3} Following voir dire proceedings, the trial court determined that the twins were not competent to testify and that certain hearsay statements of the children were not admissible pursuant to Evid. R. 807. The matter then proceeded to trial on April 3, 2006.
 {¶ 4} The twins' mother testified that she has known C. C.'s stepmother for many years. On November 1, 2004, the two women went to a rally for then-presidential candidate John Kerry which was to feature Bruce Springsteen. The woman left the twins in the care of C. C, who had never previously babysat for them. Before leaving, C. C.'s stepmother called C. C.'s father and determined that he would arrive home within an hour.
 {¶ 5} The woman further testified that when she returned to C. C.'s home to get the twins, they were extremely quiet and C. C. would not make eye contact with her. Afterward, the twins began having nightmares and were nervous and anxious, and Y. E. was observed at school engaging in inappropriate behavior at school.
 {¶ 6} On or about November 27, 2004, after the woman and her children had returned home from a funeral, Y.E. said, "how about if I stick my foot in your butt?" The woman told her that such talk was inappropriate. A. E. then came over and suggested that they do what C. C. had done to them.
 {¶ 7} The woman asked A. E. what he was talking about and he became fearful, told her that C. C. had put his "pee pee in their butts," and fled the room, crying. Y. E. then explained to the woman that when C. C. had watched them, he pulled their pants down and put his "pee pee in their butts."
 {¶ 8} The woman subsequently made a statement with the Mayfield Heights Police which focused on the allegations as they pertained to A. E. Later, in July 2005, the woman made a second police report focusing on the allegations as they pertained to Y. E.
 {¶ 9} On December 2, 2004, she met with Cuyahoga County Department of Children and Family Services ("CCDCFS") social worker Lawrence Petrus. Petrus subsequently recommended follow-up therapy at the Behavioral Health Center or the Applewood Center. The woman took the children to the Behavioral Health Center where they were seen by Katherine Peterson, Ph.D., and also took then to Applewood where they were seen by Phyllis Maris, M.A. Phyllis Maris testified that she saw Y. E. approximately seven times, and saw A. E. only since January 2006. Both boys related to her, in separate interviews, that C. C. "put his pee pee in [their] butt."
 {¶ 10} Maris opined that both boys had been the victims of sexual abuse in light of clinginess, irritability, brittleness in functioning and nightmares, which developed right after the alleged incident and lessened upon disclosure to their mother, Y. E.'s inappropriate behavior at school, and the manner in which Y. E. had colored figures, which were presented to him in the course of explaining good and bad touching.
 {¶ 11} On cross-examination, Maris acknowledged that she had stated that the twins' remarks were "contaminated," but by this she meant that the mother had helped them with their statements, and not that the mother had suggested the statements to the children. She also acknowledged that the twins' symptoms could also be associated with various stressors in the home, such as the parents' separation or fighting, but the twins did not disclose any other traumatic event.
 {¶ 12} Social worker Lawrence Petrus testified that, after he was contacted by the Mayfield Heights Police Department, he interviewed both children separately with the goals of determining whether they needed specialized medical examinations and/or counseling, and to make such recommendations and referrals. As he spoke to the boys about safety, Y. E. related that they did not feel safe in relation to C. C. because he had "touched his butt with his pee pee." A. E. also stated that he did not feel safe in relation to C. C. because C.C. "pulled his pants down and put his pee pee in his butt."
 {¶ 13} Petrus subsequently made a disposition that sexual abuse was indicated and he recommended that the twins receive counseling at Bellflower Center.
 {¶ 14} C. C. elected to present evidence and offered testimony from his father and from Dr. Katherine Peteron.
 {¶ 15} C. C.'s father testified that, while returning home from work, he received a call from his wife informing him that she was going to a campaign rally with the twins' mother, and that C. C. was left in charge of the twins. The father stated that he was approximately five minutes away from home at this point, and that when he arrived, he found the children running around the house and having fun. The man further testified that he left the children only briefly to attend to a load of laundry in the basement, and when he returned upstairs they were watching television. He opined that the mother of the twins had fabricated the allegations because she had romantic feelings for him which were unrequited.
 {¶ 16} Katherine Peteron testified that the twins had symptoms of internalizing such as whining, crying, and tearful anxiety. These symptoms could be associated with sexual abuse or other stressors, and neither boy disclosed any sexual abuse to her. She acknowledged, however, that in role-playing, the boys associated negative feelings with the babysitter, and she referred them for follow-up care at Laurelwood.
 {¶ 17} The trial court subsequently determined that C. C. was delinquent as to both complaints. Following a dispositional hearing, the court committed C. C. to the custody of the Youth Development Center, but suspended that order, placed C. C. on probation, and ordered him to complete a sex offender program, anger management counseling, and community service. It further ordered C. C. to have no further contact with the two children or their family. C. C. now appeals and assigns five errors for our review.
 {¶ 18} The first and second assignments of error are interrelated and state:
 {¶ 19} "The trial court abused its discretion in overruling Appellant's objection to testimony omitted from Appellee's Bill of Particulars and Response to Discovery provided false information that fatal to the defense."
 {¶ 20} "The trial court erred in admitting statements requested by Appellant that Appellee failed to provide in its Bill of Particulars and Response to Discovery."
 {¶ 21} Within these assignments of error, appellant asserts that the trial court erred in permitting the matter to proceed upon evidence of the events of November 1, 2004, because the date identified during discovery was November 30, 2004. Appellant also complains that he was not provided with reports of the CCDCFS in which the mother had indicated that the twins had exhibited sexual behaviors. Finally, Appellant complains that he was not provided with a Mayfield Heights Police Witness/Victim Report.
A. Date Listed on Bill of Particulars
 {¶ 22} The essential purpose of the indictment is to compel the government to aver all material facts alleged to constitute the essential elements of the offense, and thereby afford the accused adequate notice of the charges and an opportunity to defend himself against them. State v. Sellards (1985), 17 Ohio St.3d 169,478 N.E.2d 781. A precise time and date of an alleged offense are ordinarily not essential elements, and the failure to provide such specific times and dates in the indictment will not of itself provide a basis for dismissal of the charges. Id. at 172.
 {¶ 23} It is axiomatic that in cases involving sexual misconduct with a young child, precise times and dates of the conduct or offenses often will not be determined. State v. Barnecut (1988), 44 Ohio App.3d 149,542 N.E.2d 353. The inability of the state to produce such specific chronological information is without prejudice to the defendant provided that failure to allege or prove specific times and dates does not establish a material deterrent to the preparation of the defense. Id.
 {¶ 24} In this matter, we first note that appellant raised no challenge to the Bill of Particulars at trial. Accordingly, this claim is waived for all but plain error affecting substantial rights. Crim. R. 52. Further, the record indicates that although the Bill of Particulars indicated the incorrect date of November 30, 2004, police reports provided to appellant's trial counsel and admitted into evidence by the defense contained the correct date of November 1, 2004. As such, we find adequate notice was provided. In any event, the evidence indicates and all parties understood, that the charges arose from the single incident wherein appellant had watched the twins, and this occurred while his stepmother and the mother of the twins attended a rally for then-presidential candidate John Kerry which featured performer Bruce Springsteen. Appellant did mount a defense in which his father testified in thorough detail as to events of November 1, 2004. Accordingly, we reject appellant's claim that a failure of notice was prejudicial to the preparation of his defense.
B. CCDCFS Intake sheet
 {¶ 25} CCDCFS maintained that this document was confidential pursuant to R.C. 5153.17. In State ex rel. Renfro v. Dept of Human Serv. (1990),54 Ohio St.3d 25, 560 N.E.2d 230, the Supreme Court outlined the scope of this confidentiality as follows:
 {¶ 26} "Certainly, the confidentiality promised by R.C. 5153.17 is not absolute. Even so, keeping foster care records confidential, not disclosing them, is respondent's primary responsibility under the statute. This is particularly true when the records include a child abuse investigation report. R.C. 2151.421(H)(1).
 {¶ 27} "The proper procedure in determining the availability of confidential records is for the trial court to conduct an in camera inspection to determine relevancy and necessity, and whether the admission of the records outweighs the confidentiality considerations of R.C. 5153.17. State v. Hart (1988), 57 Ohio App.3d 4, 566 N.E.2d 174;Pennsylvania v. Ritchie (1987), 480 U.S. 39, 94 L.Ed. 2d 40,107 S.Ct. 989."
 {¶ 28} In this matter, it does not appear that an in camera hearing was held. The record does indicate, however, that this document was provided to appellant's counsel during trial and ultimately, after reviewing the document, appellant's trial counsel stated that he had no questions based upon it. We further note that, in her testimony, the mother stated that subsequent to November 2004, one of the children had exhibited sexual behaviors at school. Similarly, counselor Phyllis Maris mentioned this acting out behavior within her testimony at trial. The behavior is a symptom of abuse (Tr. 86) so this evidence was not exculpatory. In short, we are unable to conclude that the failure to provide this document prevented appellant from receiving a fair trial.
C. Mayfield Heights Police Report
 {¶ 29} The record indicates that the reports were read to appellant's trial counsel (Tr. 11, February 2, 2006 hearing ) and further indicates that counsel had the documents, used them as exhibits and used them to cross-examine the twins' mother. Accordingly, this claim lacks support in the record and is overruled.
 {¶ 30} The first and second assignments of error are overruled.
 {¶ 31} The third and fourth assignments of error are interrelated and state:
 {¶ 32} "The trial court erred by admitting hearsay statements of the alleged victims."
 {¶ 33} "Statements of the alleged victims were not admissible under the excited utterance exception to Evid. R. 803(2)."
 {¶ 34} Within these assignments of error, appellant claims that because the trial court determined that the twins were incompetent pursuant to Evid. R. 807, the statements should have been excluded altogether. He further argues that the trial court contravened the rule of law set forth in State v. Chappell (1994), 97 Ohio App.3d 515,646 N.E.2d 1191, by allowing admission of the statements which the twins made to social worker Lawrence Petrus admissible pursuant to Evid. R. 803(4). Appellant also claims that admission of the statements to Petrus violated his rights under the confrontation clause and that the statements that the twins made to their mother do not qualify as excited utterances as a matter of law.
A. Evid. R. 807
 {¶ 35} In State v. Dever, 64 Ohio St. 3d 401, 1992-Ohio-41,596 N.E.2d 436, the Supreme Court noted:
 {¶ 36} "The Staff Note to Evid. R. 807 states: `The rule recognizes a hearsay exception for the statements of children in abuse situations. This exception is in addition to the exceptions enumerated in Evid. R. 803 and 804.' Thus, the trial court in its discretion determines which hearsay exception, if any, would most appropriately support the admission of the child's statements into evidence."
 {¶ 37} Further, the rules have different prerequisites as Evid. R. 807(A)(2) requires that a trial court make a finding that "[t]he child's testimony is not reasonably obtainable by the proponent of the statement" before the child's statements may be admissible pursuant to that exception, and no finding of unavailability is necessary when a statement is admitted pursuant to Evid. R. 803(4), because the rule itself provides that availability of the declarant is immaterial.State v. Dever, supra.
 {¶ 38} Accordingly, this contention is without merit.
B. State v. Chappell
 {¶ 39} In State v. Chappell (1994), 97 Ohio App.3d 515, 531,646 N.E.2d 1191, this Court held:
 {¶ 40} "We would not adopt a rigid rule as to what constitutes `diagnosis and treatment' or limit diagnosis and treatment to licensed physicians, as such a narrow holding would undercut the function of nurses, psychiatrists, therapists, and various individuals who treat victims of sexual abuse. We are equally not prepared to hold that a social worker, by merely being a social worker, is automatically included in the category of individuals who can render treatment or diagnose sex abuse victims. The inclusion of a social worker into this select group of care providers must depend on her function. Where a social worker's function does not include diagnosis or treatment (whether it be mental or physical treatment of a child sex abuse victim), any statement made to the social worker cannot be admissible under the exception to the hearsay rule in Evid. R. 803(4). * * *."
 {¶ 41} "We look to the functions of the social worker in the instant case to determine whether the victim's statement to her could be interpreted as being for diagnosis or treatment."
 {¶ 42} In this matter, the evidence indicates that social worker Petrus' function was both to determine whether sexual abuse had been indicated and to then follow up on referring the family for appropriate care. As such, we conclude that the statements to him were within the realm of diagnosis and treatment and were therefore properly admissible within Evid. R. 803(4). Accord State v. Rice, Cuyahoga App. No. 82547,2003-Ohio-6947; State v. Rusnak, Cuyahoga App. No. 80011, 2002-Ohio-2143.
C. Confrontation Clause
 {¶ 43} The Sixth Amendment to the United States Constitution guarantees that the accused has the right to confront and cross-examine witnesses testifying against him. Pointer v. Texas (1965), 380 U.S. 400,406, 85 S.Ct. 1065, 13 L.Ed.2d 923. Similarly, Section 10, Article I of the Ohio Constitution provides, that "[i]n any trial, in any court, the party accused shall be allowed * * * to meet the witnesses face to face * * *." This language is interpreted in a manner which is analogous to the federal provision. See State v. Self (1990), 56 Ohio St.3d 73, 78-79,564 N.E.2d 446.
 {¶ 44} Prior to 2004, hearsay statements were admissible against a defendant, notwithstanding the Confrontation Clause, if the statements bore sufficient "indicia of reliability." See Ohio v. Roberts (1980),448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597. Later, in Crawford v.Washington (2004), 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177, the supreme court shifted the focus of its Confrontation Clause analysis from the Roberts "adequate indicia of reliability" test to one which considered whether the out of court statement was "testimonial" in nature. The supreme court held that testimonial hearsay is admissible against a criminal defendant under the Confrontation Clause only if the declarant is unavailable and the accused had a prior opportunity to cross-examine the declarant.
 {¶ 45} The term testimonial includes testimony at preliminary hearings, before grand juries, and at former trials, as well as statements elicited during police interrogations. Id. at 51. In addition, the supreme court identified three kinds of statements that might also be regarded as testimonial: (1) "ex parte in-court testimony or its functional equivalent — that is, material such as affidavits, custodial examinations, testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially," (2) extrajudicial statements * * * contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions," and (3) "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Id. at 51.
 {¶ 46} In this matter, as noted previously, the statements to Petrus came within the realm of diagnosis and treatment as they arose as Petrus was endeavoring to determine whether sexual abuse was indicated, whether the children remained at risk and whether the twins would need to be referred to counseling. The testimony was not "ex parte in-court testimony or its functional equivalent — that is, material such as affidavits, [or] custodial examinations," was not an extrajudicial statement and was not a "statement made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Accordingly, the statement was not testimonial and its admission did not violate appellant's rights to confrontation.
D. Excited Utterances
 {¶ 47} "Where a hearsay statement is found to be nontestimonial, we continue to evaluate the declaration under Ohio v. Roberts, 448 U.S. 56,100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). See Crawford, 541 U.S. at 68
(reasoning that `[w]here nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law, as doesRoberts, and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether'). Roberts held that proffered hearsay may be admitted where it "falls within a firmly rooted hearsay exception." 448 U.S. at 66.
 {¶ 48} We therefore consider whether the court abused its discretion by concluding that the statements that the twins made to their mother on or about November 30, 2004, were excited utterances under Evid. R. 803(2). State v. Duncan (1978), 53 Ohio St.2d 215, 219, 373 N.E.2d 1234.
 {¶ 49} Evid. R. 803(2) defines an "excited utterance" as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."
 {¶ 50} For an alleged excited utterance to be admissible, four prerequisites must be satisfied: (1) an event startling enough to produce a nervous excitement in the declarant, (2) the statement must have been made while still under the stress of excitement caused by the event, (3) the statement must relate to the startling event, and (4) the declarant must have personally observed the startling event. SeeState v. Brown (1996), 112 Ohio App.3d 583, 601, 679 N.E.2d 361.
 {¶ 51} In State v. Taylor (1993), 66 Ohio St.3d 295, 304,612 N.E.2d 316, the Supreme Court recognized that children are likely to remain in a state of nervous excitement longer than would an adult, and therefore held that admission of statements of a child regarding sexual assault may be proper under the excited utterance exception even when they are made after a substantial lapse of time. The Court also held there is no per se amount of time after which a statement can no longer be considered to be an excited utterance; the central requirements are that the statement must be made while the declarant is still under the stress of the event and the statement may not be a result of reflective thought.
 {¶ 52} In State v. Dukes (Aug. 25, 1988), Cuyahoga App. No. 52604, we found the spontaneous statement of a three-year-old child, ten days after the incident, constituted an excited utterance. While the child was being bathed, the child stated, "My daddy sucks my body." This court found that the child's spontaneous statement regarding a subject matter ordinarily foreign to a three-year-old child constituted an excited utterance.
 {¶ 53} Likewise, in this case, although roughly twenty-seven days had elapsed since the day that appellant babysat for the twins, we note that the boys spontaneously uttered what had happened, the statement regarded a subject matter ordinarily foreign to a young child, and that the children were both clearly under nervous excitement of the event, with A.E. then crying and fleeing from the room. Accordingly, we conclude that the trial court properly concluded that the statements constituted excited utterances and did not indicate a reflective process. AccordState v. Rice, supra.
 {¶ 54} In accordance with all of the foregoing, the third and fourth assignments of error are overruled.
 {¶ 55} The fifth assignment of error states:
 {¶ 56} "The trial court's finding of delinquency was not supported by sufficient probative evidence and was against the manifest weight of the evidence." A. Sufficiency of the Evidence
 {¶ 57} This court applies the same standard applied in criminal cases upon review of the sufficiency of the evidence supporting a delinquency adjudication. See In re N.K., Cuyahoga App. No. 82332, 2003-Ohio-7059. In State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, the Supreme Court set forth the test to be applied upon review of a challenge to the sufficiency of the evidence supporting a conviction:
 {¶ 58} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id., following Jackson v.Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L. Ed. 2d 560.
 {¶ 59} The offense of rape is defined in R.C. 2907.02(A) as follows:
 {¶ 60} "(2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."
 {¶ 61} R.C. 2907.01(A) defines "sexual conduct" in relevant part as follows:
 {¶ 62} "`Sexual conduct' means vaginal intercourse between a male and female, and anal intercourse, fellatio, and cunnilingus, between persons regardless of sex. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."
 {¶ 63} In this matter, the state presented evidence that both boys disclosed to their mother that C.C. had put his "pee pee in their butts." In addition, the boys made the same disclosure to social worker Lawrence Petrus and to therapist Phyllis Maris. The state's evidence also indicated that the boys exhibited behaviors associated with sexual abuse such as nightmares and anxiety, which lessened following the disclosures, and that Y. E. had engaged in sexualized behaviors at school. In accordance with all of the foregoing, we conclude that a rational trier of fact would have concluded that anal penetration occurred and we therefore reject this portion of the assignment of error.
B. Manifest Weight of the Evidence
 {¶ 64} In a juvenile matter, a manifest weight claim is subject to the same standard of appellate review as in a criminal case. In reB.B., Cuyahoga App. No. 81948, 2003-Ohio-5920. The test for appellate review of the manifest weight of the evidence claim is as follows:
 {¶ 65} "The appellate court sits as the `thirteenth juror' and, reviewing the entire record, weighs all the reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, quoting State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717 ("the discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").
 {¶ 66} At trial, the state's evidence indicated that the twins began experiencing nightmares and anxiety following the rally. It further indicated that the twins disclosed to their mother that they had been sexually abused by C. C. while he was babysitting for them. The boys made similar disclosures to social worker Lawrence Petrus and to Phyllis Maris, and Maris opined that, based upon their behavior, including Y. E.'s inappropriate behavior at school, that they had been sexually abused.
 {¶ 67} The testimony offered by C.C. was uncorroborated and self-serving. Although his father claimed that the twins' mother had fabricated the allegations due to unrequited romantic feelings, he later acknowledged that she had in fact introduced him to his current wife.
 {¶ 68} Based upon the record as a whole, we cannot say that the trial court lost its way and created a manifest miscarriage of justice in finding appellant delinquent as charged.
 {¶ 69} This portion of the assignment of error is without merit.
 {¶ 70} The fifth assignment of error is overruled.
Affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, JUDGE
SEAN C. GALLAGHER, P.J., CONCURS. MELODY J. STEWART, J., DISSENTS (SEE ATTACHED
DISSENTING OPINION)