[Cite as *State v. Carstaphen*, 2022-Ohio-3129.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

     Plaintiff-Appellee,          :

     v.                                  :

ANTONIO CARSTAPHEN,            :

     Defendant-Appellant.       :

No. 110906

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** September 8, 2022

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-20-650948-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Carl J. Mazzone, Assistant Prosecuting Attorney, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Francis Cavallo, Assistant Public Defender, *for appellant.*

FRANK DANIEL CELEBREZZE, III, J.:

{¶ 1} Defendant-appellant Antonio Carstaphen brings this appeal challenging his convictions and sentence for felonious assault, kidnapping, and

disrupting public services. After a thorough review of the applicable law and facts, we affirm the judgment of the trial court.

## I. Factual and Procedural History

{¶ 2} This case arose from an incident that occurred on May 30 and 31, 2020, in Garfield Heights, Ohio. There are two victims, female L.W. and male Roger Ortiz ("Ortiz").

{¶ 3} On the night in question, Ortiz went to a house on Marvin Avenue with a friend, "Brian." Ortiz met L.W. at the house. Brian left after approximately 15 minutes. There was another individual present with Ortiz and L.W. This individual, later identified as appellant, resided at the house. The three individuals — Ortiz, L.W., and appellant — consumed gin. Ortiz and L.W. consumed crack.

{¶ 4} At some point in the evening, appellant emerged from the kitchen holding a knife and a hammer. He took Ortiz's and L.W.'s cell phones. Appellant began beating L.W. in the head with a hammer. Ortiz tried to intervene, but appellant shoved him back down. Appellant forced Ortiz into a small bathroom. When Ortiz attempted to exit the bathroom, appellant struck him 6-7 times causing bruising to Ortiz's head, neck, and shoulder. Eventually, appellant gave Ortiz his phone back and let Ortiz leave the residence. Ortiz left around midnight on May 30. He called 911 after returning home but was unable to provide an exact location of the house. He recalled certain details about the location of the residence and passed the information along to police.

{¶ 5} Police were dispatched to Marvin Avenue on May 30, 2020, regarding a hostage situation. They knocked on the door of the residence and attempted to speak with the occupants. However, nobody answered the door, and officers did not believe they had probable cause to forcibly enter the house.

{¶ 6} L.W. was not permitted to leave with Ortiz. According to L.W., appellant sexually abused her after Ortiz left and kept her captive in the house.

{¶ 7} Police were again dispatched to Marvin Avenue the following day, May 31, 2020, regarding a call for a victim being held hostage. This time, when police arrived on scene, they encountered L.W. on the front porch. Officers observed that she "was visibly upset; shaking, crying; just looked very taken aback, very alleviated in her stress that we were there, that we had arrived." L.W. informed the officers that she had been beaten, raped, and held captive in the house. She provided a description of her attacker to police. She was transported to MetroHealth where a rape kit was performed.

{¶ 8} Officers patrolling the area located an individual matching the description provided by L.W. approximately four houses away from the scene. They approached this individual, and he gave police a fake name. Officers verified appellant's identity from his driver's license, and he was taken into custody.

{¶ 9} On June 8, 2020, appellant was charged in a ten-count indictment with four counts of rape, two felonious assault counts, two kidnapping counts, one count of disrupting public services, and an assault count. The victim of Counts 1-9 was L.W. The victim of Count 10 (assault) was Ortiz.

{¶ 10} A jury trial was held; however, appellant elected to try the sexually violent predator, notice of prior conviction, and repeat violent offender specifications to the bench.

{¶ 11} L.W. did not testify at trial. The state presented the testimony of the following witnesses: (1) Hristina Lekova, DNA analyst with Cuyahoga County Regional Forensic Lab; (2) Ortiz; (3) Cleveland Police Patrol Officer Danielle McNulty; (4) Cleveland Police Detective Joshua Johnson; (5) Cleveland Police Patrol Officer Aric Pruitt-Humphreys; (6) Jennifer Jacobs, SANE nurse at MetroHealth Medical Center; (7) Cleveland Police Detective Walter Emerick; (8) Cleveland Police Dispatcher Michael Sanders; and (9) Cleveland Police Sex Crimes Detective Cynthia Adkins. The defense did not call any witnesses at trial. The relevant testimony of these witnesses will be outlined below in the analysis of appellant's assignments of error.

{¶ 12} The jury returned its verdict, finding appellant not guilty on Counts 1, 2, 3, 4, 8, and 10. The jury found appellant guilty on Counts 5, 6, 7, and 9: two counts of felonious assault, one count of kidnapping, and one count of disrupting public services, respectively. The trial court found appellant guilty of the notice of prior convictions and repeat violent offender specifications charged in Counts 5, 6, and 7. The trial court ordered a presentence-investigation report and set the matter for sentencing.

{¶ 13} The trial court held a sentencing hearing where it determined that Counts 5 and 6 (the two felonious assault counts) merged for sentencing purposes,

and the state elected to sentence appellant on Count 6. The trial court imposed an indefinite prison sentence of 11 to 16.5 years on Count 7 (kidnapping), 8 years on Count 6 (felonious assault), 1.5 years on Count 9 (disrupting public services), and 6 years on the repeat violent offender specification. The trial court ordered Counts 6, 7, and 9 to run concurrently with one another but consecutively to the 6-year sentence on the repeat violent offender specification, for a total minimum prison term of 17 years and a maximum prison term of 22.5 years.

{¶ 14} Appellant then filed the instant appeal challenging the trial court's judgment. Appellant assigns five errors for our review:

> I. The trial court erred in the admission of hearsay evidence and testimonial statements, in violation of appellant's right to confront his accusers, as protected by the Sixth Amendment of the United States Constitution
>
> II. The trial court erred by failing to grant a judgment of acquittal, pursuant to Crim.R. 29(A), on the charges, and thereafter entering a judgment of conviction of those offenses as those charges were not supported by sufficient evidence, in violation of appellant's right to due process, as guaranteed by the Fourteenth Amendment to the United States Constitution.
>
> III. Appellant's convictions are against the manifest weight of the evidence.
>
> IV. The trial court erred by ordering appellant to serve a consecutive sentence without making the appropriate findings required by R.C. 2929.14.
>
> V. The trial court erred by imposing an indefinite prison sentence upon appellant which is unconstitutional.

## II. Law and Analysis

### A. L.W.'s Out-of-Court Statements

{¶ 15} In his first assignment of error, appellant argues that the trial court erred by admitting the L.W.'s out-of-court statements to officers during trial. Appellant contends that L.W.'s statements were testimonial in nature and constituted inadmissible hearsay.

{¶ 16} As noted above, L.W. did not testify at trial. L.W.'s out-of-court statements were admitted through the testimony of the responding patrol officers and investigating detective, as well as the introduction of body-camera footage that recorded the L.W.'s statements.

{¶ 17} As an initial matter, appellant does not specifically identify what testimony was improperly admitted. App.R. 16(A)(7) requires appellant to support his assignments of error and arguments with citation to the record below.

{¶ 18} Appellant generally argues that the officers' testimony about L.W.'s statements "identifying appellant as the individual responsible for causing her injuries" were testimonial in nature and should have been excluded under the Confrontation Clause. Because the trial court admitted L.W.'s statements, appellant argues that his constitutional right to confrontation was violated.

{¶ 19} Appellant appears to challenge the testimony of the responding patrol officers (McNulty, Pruitt-Humphreys, and Johnson (now a detective)), and the testimony of Detective Adkins who interviewed L.W. on the phone. Appellant argues that the testimony of these officers about L.W.'s out-of-court statements was

inadmissible because L.W.'s statements constitute hearsay and are testimonial in nature.

{¶ 20} The state, on the other hand, argues that L.W.'s out-of-court statements describing what happened to her, how she was injured, who injured her, and her description of the perpetrator were (1) admissible under the excited utterance exception to the hearsay rule; and (2) nontestimonial in nature because they were made to the responding officers for the purpose of enabling the officers to respond to the emergency.

{¶ 21} The Sixth Amendment to the United States Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him [or her]."  In *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court held that the Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he [or she] was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Id*. at 53-54.

{¶ 22} Thus, according to *Crawford*, the initial analysis to be made in determining whether a defendant's right to confrontation has been violated by the admission of out-of-court statements that are not subject to cross-examination "is not whether [the statements] are reliable but whether they are testimonial in nature."  *Toledo v. Sailes*, 180 Ohio App.3d 56, 2008-Ohio-6400, 904 N.E.2d 543, ¶ 13 (6th Dist.), citing *Crawford* at 61.

{¶ 23} *Crawford* did not precisely define "testimonial," but listed the following examples: (1) ex parte in-court testimony or its functional equivalent such as affidavits and prior testimony that the defendant was unable to cross-examine, or pretrial statements that declarants would reasonably expect to be used in a prosecution; (2) extrajudicial statements contained in formal testimonial materials such as depositions, prior testimony, or confessions; and (3) statements made under circumstances that would lead an objective witness to believe the statement would be available for use at a later trial. *Id.*

{¶ 24} Later, in *Davis v. Washington*, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), the Supreme Court further considered the meaning of "testimonial" and held that

> [s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later prosecution.

*Id.* at 822.

{¶ 25} To determine whether a statement is testimonial or nontestimonial, we inquire "whether a reasonable person in the declarant's position would anticipate his [or her] statement being used against the accused in investigating and prosecuting the [case]." *United States v. Cromer*, 389 F.3d 662, 675 (6th Cir.2004); *see also State v. Stahl*, 111 Ohio St.3d 186, 192, 2006-Ohio-5482, 855 N.E.2d 834, paragraph two of the syllabus.

{¶ 26} An ongoing emergency can exist after the original threat to the victim has ceased to exist if there is a potential threat to police or the public, or the victim is in need of emergency medical services. *Michigan v. Bryant*, 562 U.S. 344, 376, 131 S.Ct. 1143, 179 L.Ed.2d 93 (2011). An ongoing emergency also may exist after the actual threat to the victim has ceased if authorities must determine whether to release the victim back into a potentially abusive environment. *Ohio v. Clark*, 576 U.S. 237, 135 S.Ct. 2173, 192 L.Ed.2d 306 (2015).

{¶ 27} This court has held that separation of the victim and the assailant is not dispositive of the determination of an ongoing emergency. *See, e.g., Cleveland v. Williams*, 8th Dist. Cuyahoga No. 101588, 2015-Ohio-1739 (ongoing emergency was still in progress even though the offender left the scene because the assault occurred moments before the police responded and the victim was injured and in an excited state); *State v. Sanchez*, 8th Dist. Cuyahoga Nos. 93569 and 93570, 2010-Ohio-6153, ¶ 20 (domestic abuse victim's statements to responding officers were not testimonial even though the offender was not present at the scene because the abuse occurred moments before the police response and that constituted an ongoing emergency); *State v. Steele*, 8th Dist. Cuyahoga No. 91571, 2009-Ohio-4704 (victim's statements made to responding officers were nontestimonial in nature because the officers' questions were posed upon initial contact with the victim and under circumstances for which an ongoing threat existed).

{¶ 28} In the instant matter, the record reflects that the statements L.W. made to the responding officers on the scene and at the hospital were not

testimonial. These statements were made to law enforcement in the course of responding to an emergency situation. L.W. had just managed to notify authorities after appellant had assaulted her with a hammer and held her captive in the Marvin Avenue house for at least a day. Furthermore, when officers initially arrived on scene, appellant was not present, and had not been apprehended. Until appellant was taken into custody, an ongoing emergency existed requiring police response.

{¶ 29} Although the statements were nontestimonial in nature and not subject to the confines of the Confrontation Clause, we must nevertheless proceed to determine their admissibility. *Crawford*, 541 U.S. at 68; *State v. Braun*, 8th Dist. Cuyahoga No. 91131, 2009-Ohio-4875, ¶ 117; *State v. McCree*, 8th Dist. Cuyahoga No. 87951, 2007-Ohio-268, ¶ 57. A trial court has broad discretion regarding the admission of evidence, including whether evidence constitutes hearsay and whether it is admissible hearsay. *Solon v. Woods*, 8th Dist. Cuyahoga No. 100916, 2014-Ohio-5425, ¶ 10. We therefore will not disturb a trial court's decision regarding the admissibility of hearsay evidence absent an abuse of discretion. *Id.*, citing *State v. Maurer*, 15 Ohio St.3d 239, 265, 473 N.E.2d 768 (1984).

{¶ 30} "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Evid.R. 801(C). Hearsay is generally not admissible unless it falls within one of the exceptions to the rule against hearsay. Evid.R. 802, 803, 804; *State v. Steffen*, 31 Ohio St.3d 111, 509 N.E.2d 383 (1987). Statements constitute hearsay only if they were offered to prove the truth of the matters asserted in those

statements. If those statements were offered for some other purpose, they are not inadmissible hearsay. *State v. Davis*, 62 Ohio St.3d 326, 344, 581 N.E.2d 1362 (1991).

{¶ 31} Pursuant to *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), an out-of-court statement may be admissible even if the declarant is unavailable for cross-examination if we find that the statement falls "within a firmly rooted hearsay exception" or bears adequate indicia of reliability. *Id.* at 66.

{¶ 32} The victim's statements to the responding officers were admissible under the excited utterance hearsay exception. An excited utterance is defined as a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Evid.R. 803(2).

{¶ 33} For an alleged excited utterance to be admissible, four prerequisites must be satisfied: (1) a startling event producing a nervous excitement in the declarant; (2) the statement must have been made while still under the stress of excitement caused by the event; (3) the statement must relate to the startling event; and (4) the declarant must have personally observed the startling event. *State v. Brown*, 112 Ohio App.3d 583, 601, 679 N.E.2d 361 (12th Dist.1996).

{¶ 34} In the instant matter, the record reflects that L.W.'s statements on scene and at the hospital fall within the excited utterance exception to the hearsay rule. The record reflects that she was still under the stress of excitement caused by appellant's conduct — assaulting her with a hammer and holding her captive for at least a day. L.W.'s statements identifying appellant as the perpetrator were related

to the startling event — being beaten, held captive, and managing to escape and call police.

{¶ 35} To the extent that appellant argues that L.W. was no longer under the excitement when she made statements to Detective Adkins during the phone interview, conducted during the same week as the incident, appellant's argument is misplaced. Although the passage of time between the event and the declaration is relevant, it is not dispositive of the issue. *State v. Taylor*, 66 Ohio St.3d 295, 303, 612 N.E.2d 316 (1993). The Supreme Court of Ohio has made clear that, to be an excited utterance, the statement need not be strictly contemporaneous with the startling event. *State v. Duncan*, 53 Ohio St.2d 215, 373 N.E.2d 1234 (1978), paragraph one of the syllabus. "'[E]ach case must be decided on its own circumstances, since it is patently futile to attempt to formulate an inelastic rule delimiting the time limits within which an oral utterance must be made in order that it be termed a spontaneous exclamation.'" *Taylor* at *id.*, quoting *Duncan* at 219-220.

{¶ 36} Rather, we consider whether the declarant is still under the stress of the event or whether the statement was the result of reflective thought. *Duncan* at *id.*; *see also In re C.C.*, 8th Dist. Cuyahoga Nos. 88320 and 88321, 2007-Ohio-2226 (finding an excited utterance even though 27 days passed between the event and the statement); *State v. Duke*, 8th Dist. Cuyahoga No. 52604, 1988 Ohio App. LEXIS 3466 (Aug. 25, 1988) (finding an excited utterance when the statement was made ten days following an incident).

{¶ 37} Here, it is unclear exactly when the interview was conducted. However, it is undisputed that the interview was conducted shortly after the incident took place — not weeks or months later. Based on the gruesome circumstances in this case — appellant assaulting L.W. with a hammer and holding her captive — it is reasonable that L.W. was still under the stress of the event during the phone interview with Detective Adkins.

{¶ 38} For all of the foregoing reasons, appellant's first assignment of error is overruled. The trial court did not abuse its discretion in admitting L.W.'s out-of-court statements at trial.

## B. Crim.R. 29/Sufficiency of the Evidence

{¶ 39} In his second assignment of error, appellant argues that his convictions were not supported by sufficient evidence.

{¶ 40} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Driggins*, 8th Dist. Cuyahoga No. 98073, 2012-Ohio-5287, ¶ 101, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Vickers*, 8th Dist. Cuyahoga No. 97365, 2013-Ohio-1337, ¶ 17, citing *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991).

{¶ 41} Appellant was convicted of felonious assault (Count 5) in violation of R.C. 2903.11(A)(1), felonious assault (Count 6) in violation of R.C. 2903.11(A)(2), kidnapping (Count 7) in violation of R.C. 2905.01(A)(2), and disrupting public services (Count 9) in violation of R.C. 2909.04(A)(1).

{¶ 42} In support of his sufficiency challenge, appellant initially attacks the credibility of L.W., who did not testify at trial. Specifically, appellant suggests that L.W.'s allegations to police were not credible because she failed to show up at trial. Appellant further suggests that L.W. was not held captive at the house, but rather willingly went to, and stayed at, the house where she consumed alcohol and crack.

{¶ 43} Appellant's arguments attacking L.W.'s credibility are misplaced. They pertain to the manifest weight of the evidence, not the sufficiency of the evidence.

{¶ 44} Appellant further argues that the state failed to present sufficient evidence of motive. Appellant's argument is again misplaced.

{¶ 45} Motive was not an essential element of the felonious assault, kidnapping, and disrupting public services offenses for which appellant was convicted. It has long been held that motive is not an element that needs to be established in order to sustain a conviction. *State v. Allen*, 8th Dist. Cuyahoga No. 85530, 2005-Ohio-4813, ¶ 15, citing *State v. Lancaster*, 167 Ohio St. 391, 149 N.E.2d 157 (1958), paragraph two of the syllabus. Further, proof of motive does not establish guilt. Where the state establishes a defendant's guilt beyond a reasonable

doubt, it is immaterial what the motive may have been for the crime, or whether any motive is shown. *Id*.

{¶ 46} Based on the foregoing analysis, appellant's second assignment of error is overruled. Appellant's convictions were supported by sufficient evidence.

### C. Manifest Weight

{¶ 47} A manifest weight challenge attacks the credibility of the evidence presented and questions whether the state met its burden of persuasion. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13. When considering an appellant's claim that a conviction is against the manifest weight of the evidence, the court of appeals sits as a "thirteenth juror" and may disagree "with the factfinder's resolution of * * * conflicting testimony." *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, citing *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). The reviewing court must examine the entire record, weigh the evidence and all reasonable inferences, consider the witnesses' credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 48} In support of his manifest weight challenge, appellant argues that there is no evidence corroborating Ortiz's testimony or L.W.'s allegations that appellant caused her injuries. Appellant's argument is unsupported by the record.

{¶ 49} As noted above, in her statements to police at the scene and hospital, L.W. identified appellant as her assailant and the individual that inflicted her injuries.

{¶ 50} Ortiz testified at trial that there was a black male at the house on Marvin Avenue. This individual was later identified as appellant. According to Ortiz, the black male was in the kitchen for a few minutes then he came out with a hammer and a knife. The man took Ortiz's cell phone and L.W.'s cell phone and kept them for approximately one hour. Ortiz testified that this man beat on L.W.'s head with the handle of a hammer.

{¶ 51} The testimony of SANE nurse Jennifer Jacobs supported L.W.'s allegations and Ortiz's trial testimony. Jacobs testified that L.W. identified her assailant as "Anthony" and indicated that the assailant was a friend. Jacobs identified a photograph of the top of L.W.'s head. The photograph depicted dried blood and linear marking. There was bruising on L.W.'s shoulder, chest, and legs. These injuries are not consistent with the defense's theory that appellant did not kidnap L.W. and that she was at the house voluntarily. Finally, appellant's conduct at the time he was arrested was also inconsistent with the defense's theory that he was innocent. When officers approached appellant, he initially gave them a fake name.

{¶ 52} Appellant's convictions are not against the manifest weight of the evidence. The jury had sufficient evidence about the witnesses to assess the credibility of their testimony. This is not the case in which the evidence weighs

heavily against appellant's convictions. For all of these reasons, appellant's third assignment of error is overruled.

## D. Consecutive Sentences

{¶ 53} In his fourth assignment of error, appellant argues that the trial court erred in imposing consecutive sentences.

{¶ 54} To impose consecutive prison sentences, the court must make three findings: first, the court must find that consecutive sentences are "necessary to protect the public from future crime or to punish the offender." R.C. 2929.14(C)(4). Next, the court must find "that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." *Id*. Finally, the court must find that at least one of the following applies:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 55} To make the requisite statutory findings, "'the [trial] court must note that it engaged in the analysis' and that it 'has considered the statutory criteria and specifie[d] which of the given bases warrants its decision.'" *State v. Bonnell*, 140

Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 26, quoting *State v. Edmonson*, 6 Ohio St.3d 324, 326, 715 N.E.2d 131 (1999). The trial court must "incorporate its findings into its sentencing entry." *Bonnell* at ¶ 37. The trial court is not required to make a "talismanic incantation of the words of the statute." *Id.*

{¶ 56} R.C. 2953.08(G)(2), which guides our review of consecutive felony sentences, "compels appellate courts to modify or vacate sentences if they find by clear and convincing evidence that the record does not support any relevant findings under * * * (C)(4) of section 2929.14[.]" *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 22; *see also State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 28; *State v. Roberts*, 2017-Ohio-9014, 101 N.E.3d 1067, ¶ 10 (8th Dist.) ("[i]f the court made the required findings in order to impose consecutive sentences, we must affirm those sentences unless we 'clearly and convincingly' find that the record does not support the court's findings," quoting R.C. 2953.08(G)(2)); *State v. Venes*, 2013-Ohio-1891, 992 N.E.2d 453, ¶ 19 (8th Dist.).

{¶ 57} In this case, appellant concedes that the trial court made the requisite findings at the sentencing hearing. In imposing consecutive sentences, the trial court made the following findings in open court:

> Pursuant to the factors involved for consecutive sentences, I'm going to also impose a sentence with respect to the repeat violent offender specification. First, I will note that consecutive sentences are necessary to, first of all, punish this defendant and protect our society and are not disproportionate to his acts in this matter. I'll note that this crime was committed while being supervised by the APA; that that factor, as well as the factor of the harm that was occasioned upon the victim in this

case with a deadly weapon, a hammer, that the single term does not adequately reflect the seriousness of that conduct. Again, certainly, his extensive criminal history shows that consecutive terms are needed to protect the public.

(Tr. 993-994.)

{¶ 58} Appellant appears to argue that the trial court did not incorporate its findings into the sentencing journal entry. Appellant's argument is unsupported by the record. The trial court's sentencing journal entry provides, in relevant part,

The court imposes prison terms consecutively finding that consecutive service of the prison term is necessary to protect the public from future crime or to punish defendant; that the consecutive sentences are not disproportionate to the seriousness of defendant's conduct and to the danger defendant poses to the public; and that, the defendant committed one or more of the multiple offenses while the defendant was awaiting trial or sentencing or was under a community control or was under post-release control for a prior offense, or at least two of the multiple offenses were committed in this case as part of one or more courses of conduct, and the harm caused by said multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of defendant's conduct, or defendant's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by defendant.

{¶ 59} Accordingly, the trial court complied with *Bonnell* by incorporating its consecutive-sentence findings into the sentencing journal entry. Appellant's fourth assignment of error is overruled.

**E. Reagan Tokes Law**

{¶ 60} In his fifth assignment of error, appellant argues that the trial court erred by imposing an indefinite sentence under the Reagan Tokes Law because it is

unconstitutional. Specifically, appellant argues that Reagan Tokes violates the separation-of-powers doctrine and due process.

{¶ 61} This court has recently conducted en banc review of the constitutionality of the Reagan Tokes Law. *See State v. Delvallie*, 2022-Ohio-470, 185 N.E.3d 356 (8th Dist.). In *Delvallie*, this court found "that the Reagan Tokes Law, as defined under R.C. 2901.011, is not unconstitutional." *Delvallie* at ¶ 17. This court overruled the separation-of-powers and due process challenges presented by appellant in this appeal to the constitutionality of the Reagan Tokes Law and, consequently, we need not dwell on them.

{¶ 62} Pursuant to *Delvallie*, appellant's fifth assignment of error is overruled. The trial court did not err in imposing an indefinite prison sentence for appellant's qualifying offenses.

### III. Conclusion

{¶ 63} The trial court did not err or abuse its discretion in admitting L.W.'s out-of-court statements at trial. Appellant's convictions were supported by sufficient evidence and were not against the manifest weight of the evidence. Finally, the trial court did not err in imposing consecutive sentences or imposing an indefinite prison sentence pursuant to the Reagan Tokes Law.

{¶ 64} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
FRANK DANIEL CELEBREZZE, III, JUDGE

ANITA LASTER MAYS, P.J., CONCURS;
MARY EILEEN KILBANE, J., CONCURS IN JUDGMENT ONLY

N.B. Judge Anita Laster Mays is constrained to apply *Delvallie's* en banc decision. For a full explanation of her analysis, *see State v. Delvallie*, 2022-Ohio-470, 185 N.E.3d 356 (8th Dist.).

Judge Mary Eileen Kilbane joined the dissenting opinion by Judge Lisa B. Forbes and the concurring in part and dissenting in part opinion by Judge Anita Laster Mays in *Delvallie* and would have found the Reagan Tokes Law unconstitutional.