[Cite as *State v. McCully*, 2020-Ohio-659.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                                     :

    Plaintiff-Appellee,                  :

    v.                                            :

DWAYNE MCCULLY,                              :

    Defendant-Appellant.              :

No. 107888

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** February 27, 2020

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-628834-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Kelly Needham, Assistant Prosecuting Attorney, *for appellee.*

Russell S. Bensing, *for appellant.*

EILEEN T. GALLAGHER, A.J.:

{¶ 1} Defendant-appellant, Dwayne McCully, appeals from his conviction and sentence following a jury trial. He raises the following assignments of error for review:

1. The trial court erred in admitting evidence of the police investigation of defendant in connection with other possible crimes.

2. The trial court erred in giving a flight instruction.

3. The trial court erred in not submitting a full set of written instructions to the jury.

4. The trial court's imposition of maximum consecutive sentences was not supported by the record.

{¶ 2} After careful review of the record and relevant case law, we reverse the trial court's judgment and remand for a new trial. The trial court violated the express mandates of Crim.R. 30(A) by failing to provide the jury with either a written or an audio copy of the final jury instructions. The state has not satisfied its burden of demonstrating that the error did not affect the substantial rights of the defendant.

## I. Factual and Procedural History

{¶ 3} In May 2018, McCully was named in a two-count indictment, charging him with aggravated robbery in violation of R.C. 2911.01(A)(1), with one- and three-year firearm specifications; and felonious assault in violation of R.C. 2903.11(A)(2), with one- and three-year firearm specifications. The matter proceeded to a jury trial in September 2018, and the following evidence was adduced.

{¶ 4} On March 11, 2018, victim, Daniel Blackburn, got a flat tire while driving his vehicle in Cleveland, Ohio. He pulled into a nearby gas station at approximately 5:32:57 a.m. to assess the damage to his tire. Blackburn testified that

he then noticed a man asking for change. Following a brief discussion, the man agreed to change Blackburn's tire for ten dollars.

{¶ 5} As the man was changing Blackburn's tire, Blackburn was on his cell phone and was not paying attention to his surroundings. Blackburn testified that he was sending a text message when someone approached him and pointed a gun at him. Believing he was being robbed, Blackburn "smacked [the gun]" down," causing the gun to fire a single shot. The bullet traveled through Blackburn's pants, just missing his lower body. Blackburn testified that he then ran inside the gas station where the police were called. Blackburn stated that he did not have an opportunity to look at the shooter and was unable to provide much information to the responding officers.

{¶ 6} Surveillance footage recovered from the gas station captured the incident on video. The video reflects two vehicles, each containing two male occupants, pull into the gas station together at approximately 5:32:12 a.m. A man wearing a red sweatshirt is observed getting out of the driver's seat of the first vehicle. An individual later identified as McCully is seen getting out of the passenger's seat of the second vehicle. Less than one minute later, Blackburn's vehicle is seen pulling into the gas station with a flat tire. While Blackburn's tire was being replaced, McCully and the three other men are seen "talking amongst each other" and "looking over at the victim." At approximately 5:34:51 a.m., McCully and the man wearing a red sweatshirt went inside the gas station. The other two men stayed outside and stood together near the gas pump.

{¶ 7} At approximately 5:35:23 a.m., McCully is seen standing just inside the front door of the gas station with the man wearing a red sweatshirt. Relevant to this appeal, the video established that McCully did not attempt to purchase anything while inside the gas station. Rather, he stood by the door during the entire incident and watched the two other individuals confront the victim.

{¶ 8} At approximately 5:36:14 a.m., the two individuals who remained outside suddenly approached Blackburn and brandished their firearms. When one of the men got near Blackburn, Blackburn pushed the man's arm away, and the gun was fired. As Blackburn retreated into the gas station, McCully and the man wearing a red sweatshirt walked outside and began "talking with the shooter and the other people he came with." At approximately 5:36:43, McCully is seen getting into the first vehicle with the man in a red sweatshirt and one of the men who brandished a gun. The man who fired the shot is seen getting into the second vehicle by himself. Within seconds, both vehicles left the gas station.

{¶ 9} Detective Barry Bentley of the Cleveland Police Department was assigned to investigate the robbery. In the course of his investigation, Det. Bentley contacted the victim and obtained the surveillance video from the gas station. Despite his best efforts, Det. Bentley was unable to identify any of the four individuals involved. Accordingly, Det. Bentley generated still images of each perpetrator from the video and posted the images on a bulletin board at the detective bureau. Thereafter, Det. Bentley was contacted by Detective Shane Bauhof and Patrol Officer Brandon Melbar, who each recognized McCully. Det. Bauhof testified

that he recognized McCully from social media posts he reviewed in the course of his employment. Similarly, Officer Melbar testified that he identified McCully from Facebook photographs he reviewed in the course of unrelated police investigations. Based on this information, Det. Bentley confirmed McCully's identity by comparing the still images to photographs posted on McCully's social media accounts.

{¶ 10} The video footage of the incident was played for the jury during Det. Bentley's direct examination. Based on his experience with robbery investigations, Det. Bentley opined that McCully's role in the robbery was to serve as "the lookout."

{¶ 11} At the conclusion of trial, the jury found McCully guilty of both counts and the accompanying firearm specifications. In October 2018, McCully was sentenced to 11 years in prison on the aggravated robbery offense, to be served consecutively with a three-year firearm specification. McCully was further sentenced to eight years in prison on the felonious assault offense, to be served consecutively with a three-year firearm specification. The sentence imposed on each offense was ordered to run consecutively, for a total prison term of twenty-five years.

{¶ 12} McCully now appeals from his convictions and sentence.

## II. Law and Analysis

## Written Jury Instructions

{¶ 13} For the purposes of this appeal, we review McCully's assigned errors out of order. In his third assignment of error, McCully argues the trial court erred by failing to submit a full set of written instructions to the jury during deliberations. He contends that the written instructions provided to the jury were limited to the elements and definitions pertinent to the crimes of aggravated robbery and felonious assault. Thus, McCully submits that by failing to provide the jury with the complete written instructions relating to his constitutional rights, including the state's burden of proof and his presumption of innocence, the trial court violated the express mandates of Crim.R. 30(A).

{¶ 14} Crim.R. 30(A) requires the court to "reduce its final instructions to writing or make an audio, electronic, or other recording of those instructions, provide at least one written copy or recording of those instructions to the jury for use during deliberations, and preserve those instructions for the record."

{¶ 15} In this case, defense counsel objected to the scope of the written instructions prior to the trial court's closing instructions to the jury. Relevant to this appeal, the following exchange occurred on the record:

> DEFENSE COUNSEL: I have a question. We don't have the boilerplate language with the instructions of burden of proof and reasonable doubt. Will we get those?

> THE COURT: Not a copy. I can run you off a copy if you want. It's taken straight from OJI.

> DEFENSE COUNSEL: Those will go to the jury?

> THE COURT: No, only what I gave you, the instructions of relevant law.

DEFENSE COUNSEL: Well, your Honor, can I address that, if I may?

THE COURT: Sure.

DEFENSE COUSEL: It seems a little unfair that the jury would get the language of the various offenses in writing and not get the actual charge dealing with burden of proof and the standard beyond a reasonable doubt. They'd be getting just part of the jury instruction in writing to the exclusion of very important constitutional rights.

THE COURT: Some judges don't send back written instructions at all. It's not mandatory that you do it. If a question should arise as to a definition, or if the jury indicates that they are confused about something or need something clarified, then I'll reduce it to writing.

DEFENSE COUNSEL: Just for the record, in all due respect, I believe if they only get part of the instructions in writing, and they don't get all the necessary constitutional guarantees, it would be unfair to the defendant.

{¶ 16} Viewing the language of Crim.R. 30(A), we find the trial court was required to provide the jury with either a written or record copy of its final instructions for reference during deliberations. Contrary to the court's statement on the record, the requirements of Crim.R. 30(A) are mandatory. Thus, the trial court erred by failing to comply with the express terms of the criminal rule. *See State v. Mayle*, 7th Dist. Belmont No. 14 BE 39, 2015-Ohio-4838, ¶ 18. Moreover, under the particular facts of this case, we are unable to find the error to be harmless.

{¶ 17} Crim.R. 52(A) defines harmless error in the context of criminal cases and provides: "Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Under the harmless-error standard of review, "the government bears the burden of demonstrating that the error did not

affect the substantial rights of the defendant." (Emphasis sic.) *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 15, citing *United States v. Olano*, 507 U.S. 725, 741, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). In most cases, in order to be viewed as "affecting substantial rights," "'the error must have been prejudicial: It must have affected the outcome of the [trial] court proceedings.'" *State v. Fisher*, 99 Ohio St.3d 127, 2003-Ohio-2761, 789 N.E.2d 222, ¶ 7, quoting *Olano* at 734. Accordingly, Crim.R. 52(A) asks whether the rights affected are "substantial" and, if so, whether a defendant has suffered any prejudice as a result. *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153, ¶ 24-25. If the government does not satisfy its burden, the appellate court has no discretion to disregard the error; rather, the court must reverse the conviction. *Perry* at ¶ 15.

{¶ 18} As noted by McCully on appeal, the staff notes to Crim.R. 30(A) reflect that the trial court's obligation to reduce jury instructions to writing was done in an effort to enhance each juror's level of comprehension. The rule recognizes that:

> Providing written instruction increases comprehension and reduces questions from the jury during the deliberative process. * * *. Written instructions can also help structure the deliberative process and increase juror confidence in their verdict. Jurors report that following the written instructions like a blueprint allowed them to conduct efficient deliberations.

Report and Recommendations of the Supreme Court of Ohio Task Force on Jury Service, 12-13 (Feb. 2004).

{¶ 19} In this case, the instructions that were not submitted to the jury in writing constituted pages 492-505 of the trial transcript — a substantial portion of

the court's final jury charge.  Significantly, the instructions that were omitted from the written instructions relate to fundamental principles of law that constitute the foundation of our judicial system, including the state's burden of proof, the presumption of innocence, the definition of reasonable doubt, and the jurors' role as triers of fact and credibility.

{¶ 20} Given the nature of jury deliberations, the potential implications of the trial court's failure to comply with Crim.R. 30(A) are not readily observable, because the jury's consideration of the relevant instructions are not part of this record.  Under such circumstances, this court lacks the ability to appropriately assess the prejudice suffered by McCully.  While the state characterizes the evidence against McCully as "overwhelming," we find no information in this record to suggest the state satisfied its burden under Crim.R. 52(A).  In short, the silent nature of jury deliberations prevents this court from weighing the ramifications of the trial court's error against the strength of the state's evidence.  The state can provide no insight into the jury's consideration of the oral instructions provided by the trial court prior to deliberations.  As such, the state can only speculate as to whether, absent written copies, those oral instructions relating to the constitutional rights afforded to all defendants were sufficiently understood and applied by each juror.

{¶ 21} We further note that the fact that the jury did not pose any questions to the court during deliberations is not determinative.  In our view, the jury's failure to seek clarification does not eliminate the possibility that the panel misapplied

constitutional pillars of our judicial system while simultaneously believing it was following the law as orally instructed by the court.

{¶ 22} Based on the foregoing, we find the state failed to satisfy its burden of demonstrating that the trial court's error did not affect the substantial rights of the defendant. Accordingly, we cannot disregard the error under Crim.R. 52(A). Our decision is not a direct comment on the strength of the state's evidence. Rather, our judgment is predicated on the mandatory language of Crim.R. 30(A) and the burden of proof applied under Crim.R. 52(A) – "a standard significantly more favorable to the defendant." *Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, at ¶ 15. Had defense counsel not raised a timely objection, resolution of this matter under the plain error standard may have led to a different outcome. *See State v. Wiley*, 8th Dist. Cuyahoga No. 99576, 2014-Ohio-27 (Although the trial court did not comply with Crim.R. 30, defendant did not demonstrate that the trial court's failure rose to the level of plain error, i.e., that if the court had provided all of its instructions in writing to the jury, the outcome of the trial would have been different.).

{¶ 23} McCully's third assignment of error is sustained. Given our resolution of McCully's third assignment of error, his remaining assignments of error are moot. The trial court's judgment is hereby reversed, and the matter is remanded for a new trial.

{¶ 24} Judgment reversed and remanded.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, ADMINISTRATIVE JUDGE

ANITA LASTER MAYS, J., and
EILEEN A. GALLAGHER, J., CONCUR