[Cite as *State v. Baird*, 2023-Ohio-303.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                         :

    Plaintiff-Appellee,          :

                                     No. 111428

    v.                                   :

ANDERSON BAIRD, SR.,                   :

    Defendant-Appellant.         :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 2, 2023

---

Criminal Appeal from the Cuyahoga County Common Pleas Court
Case No. CR-20-649656-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Fallon Kilbane McNally, Assistant Prosecuting Attorney, *for appellee*.

Flowers & Grube, Melissa A. Ghrist, and Louis E. Grube, *for appellant*.

ANITA LASTER MAYS, J.:

{¶ 1} Defendant-appellant Anderson Baird, Sr. ("Baird") appeals his convictions and sentence and asks this court to reverse his convictions and remand

to the trial court for further proceedings. We affirm Baird's convictions and sentence.

{¶ 2} Baird elected to bifurcate the trial. After trial, the trial court found Baird guilty of domestic violence, a third-degree felony in violation of R.C. 2919.25(A).[1] A jury found Baird not guilty of endangering children, a first-degree misdemeanor in violation of R.C. 2919.22(A), but guilty of abduction, a third-degree felony in violation of R.C. 2905.02(A)(2); disrupting public services, a fourth-degree felony in violation of R.C. 2909.04(A)(1); and criminal damaging or endangering, a first-degree misdemeanor in violation of R.C. 2909.06(A)(1). Baird was sentenced to a total of 30 months imprisonment.

## I. Facts and Procedural History

{¶ 3} On March 17, 2020, at around 3:00 a.m., Baird awakened his girlfriend, Da'Jera Page ("Page"), and slapped her. Later that day, as a result of the slap, Page phoned a friend and asked the friend to come and pick up Page and her two-week old infant. Upon hearing this, Baird punched Page in the chest and spat on her, after pulling the infant from Page's arms. Page attempted to dial 911, and Baird took her phone and broke it. Page was able to flee the home with her baby, and the police arrived at the home to speak with Baird. Baird's five-year-old son,

---

[1] Baird is not appealing his conviction for domestic violence.

A.J., told police that Baird and Page were arguing and Baird hit Page in the chest. The police then arrested Baird.

{¶ 4} Baird was charged with five counts, including domestic violence, endangering children, abduction, disrupting public services, and criminal damaging or endangering. Baird elected to have a bench trial on the domestic violence count and a jury trial on the remaining four counts. Baird's trial counsel requested that the jury not hear any evidence pertaining to Baird's guilt of domestic violence or any facts relating to domestic violence.

{¶ 5} The state responded and stated:

I would also like to object to bifurcation. That's another trial strategy that the State did not have notice of prior. Also, all of these charges come from the same incident where allegedly the defendant assaulted the victim, destroyed her phone, and these are all coming from the same incident.

So to try to limit her testimony to only disrupting public services when the reason the defendant was disrupting public services was the victim was calling 911 to — attempting to call 911 to report domestic violence, if she's not allowed to speak about the domestic violence in the jury trial, that's unfairly and unnaturally restricting her testimony. I don't think that would be proper.

(Tr. 41-42.)

{¶ 6} The trial court responded, stating:

I didn't say that I was going to prevent her from giving context to her testimony. The fact that they're trying Count 1 to me, I'm making a decision as to whether the State has proved its case or not. But you do have to put the actions in context so I'm not — I'll wait and see how the evidence goes, but I'm not saying that the State can't mention anything that happened up to a certain point.

The decision on whether there was a crime committed as to domestic violence will be mine, but for information and questioning relating to how we ended up here on a five count indictment, at this point, I'm not preventing the State from presenting evidence. It's just you're not going to be arguing to the jury that the certain acts constitute domestic violence. You'd be arguing that to the Court if it survives Rule 29.

(Tr. 42-43.)

{¶ 7} At trial, during Page's testimony, she testified that she had trouble getting to court because her car had four flat tires and sugar was put in her gas tank. Baird's trial counsel objected, and the trial court overruled the objection. Page also testified that her car did not have flat tires the previous day. Next Page testified about an incident that happened earlier in the week at the courthouse. Page stated:

Monday morning when I arrived, I seen Anderson sitting outside and he was telling me, like, so you going to come to court? And I was saying yes and he was telling me that — he was just telling me like to leave and if I didn't leave that I was going to be f**ked and that he just wanted me to leave.

(Tr. 282-283.)

{¶ 8} Baird's trial counsel asked the trial court if he could approach, and the trial court stated that he could not but could make a record later. Page's testimony continued, and she testified as to the events on March 17, 2020. Page testified:

I was laying in the bed and Anderson had came in, he was drunk. I could smell the liquor on him. And he woke me up and he was like going off and I didn't understand for what. And then I just got slapped in my face three times. And he was just still yelling about the — I was half asleep so I really was, like, so confused. Then he walked out the door and he left.

(Tr. 287-288.)

{¶ 9} Baird's counsel objected, and the trial court overruled his objection.

Page's testimony continued, with her stating:

> March 17th when I woke up, I was really confused as to why he had slapped me prior to that night. So when I woke up, I had questioned — I had asked him like, what was your point of slapping me, like, what did I do? And he had claimed that he didn't remember anything. He didn't know —
>
> * * *
>
> He didn't know what — like he was trying to act like he didn't know what I was talking about. So we began to keep talking about the situation and we somehow got into an argument and I noticed that when we went get into an argument, I try to leave before it could get to that point where he puts his hands on me. So we was arguing, we was going at it, so I —

(Tr. 292.)

{¶ 10} The state interrupted Page's testimony to ask her where in the apartment did the altercation take place. Page responded that they started in the bedroom but migrated to the living room where A.J. was sitting on the couch. Page continued her testimony, stating:

> In the midst of us arguing, I called my friend and I asked her to come pick me and my child up and take us to my mom's house. And when she got there to pick me up where you see that window, that's my parking — that's my driveway. So when she got here, I was right there by the window because she was blowing, so.

(Tr. 293.)

**{¶ 11}** After clarifying to the court that Page's friend was honking the horn so Page and her infant could leave the apartment, Page testified that

> I was at that window, I was trying to tell her, here I come. Anderson was blocking me. He was grabbing me. He was tussling. He was trying to take the baby out my arms, out of my hand. I had her in a car seat. He was trying to take the baby. He began to tell me that I wasn't taking his child anywhere. We wasn't going nowhere. My friend was still out there honking. So I'm trying — I told him, like, at this point, I'm about the call the police.
>
> * * *
>
> I had my daughter in my right hand and she was in a car seat so I had her like this, he's tussling with me like this and he's pushing me (indicating). He's trying to grab the baby so we're tussling for her. So the process of us tussling for her, he's way bigger and stronger than me so he overpowered me and when he overpowered me, I fall to that window and he snatches the baby.
>
> * * *
>
> She was in the car seat and she was like — she was a newborn, so I did have her strapped in so she was fine. She was — my daughter was very little when she was born, so the car seat was kind of like too big for her. So she was, like, in the car seat, but she didn't fall out or anything. I guess you could say that she was being tossed around in the car seat.
>
> * * *
>
> I had tried to — I tried to call the police. He snatched my phone. He threw my phone to the ground and he begin to stomp the phone. And after that, I didn't hear no honking no more so at this point I'm crying. I'm in his face trying to get my daughter back. He then spit. He spit on me and then he punched me.
>
> And then after that, I'm crying, I'm going — I'm still crying, I'm still trying to get my daughter because I'm not leaving without her and that's what I kept him, like, I'm not leaving without my child, dah, dah,

dah. He's like, b**ch, just leave. Telling me like just leave. I'm like I'm not leaving without my child. Give me my baby and I'll leave.

He then gave me the baby and — he gave me the baby and that's when I left.

(Tr. 294-297.)

{¶ 12} Page left the apartment and walked three blocks to her mother's house, where her mother called the police. Page left her mother's home and walked back to the apartment, where she met the police officers. When they arrived at the apartment, Baird let them in the apartment. (Tr. 314.) Page testified that she did not enter the apartment with the police and remained outside. Page stated that a short time later, the police escorted Baird out of the apartment in handcuffs and took him into custody.

{¶ 13} Baird's trial counsel objected to Page's testimony, stating:

I just would like to place, so I don't have to continually be objecting, I'd like to place an ongoing objection to the deluge of inappropriate 404(B) evidence that's been like an avalanche into the record thus far.

And we're supposed to partition this off so that the jury is hearing evidence as to Counts 2, 3 and 4 and 5. And Ms. Page has been saying things as to my client being a drunk, being violent, slapping her around, many other things. I objected. I stopped objecting because I didn't want the jury to infer that what I was doing was inappropriate and the Court said I'd be able to make a record at this point.

And so I'd like the Court to just acknowledge that I'm objecting to all of that evidence, all of that testimony rather, in front of the jury and note my ongoing objection to it so I don't have to continue to object as we go forward in the trial.

(Tr. 302-303.)

{¶ 14} The state responded to Baird's counsel's objections, stating:

Thank you, your Honor. These crimes occurred in this specific context of an intimate domestic relationship and the specific charges and incident that took place on March 17th didn't occur in a vacuum. And the victim's description of her relationship, her living situation, and the defendant's violence towards her are all a part of that situation.

Specifically, Count 1 and the other four counts which are being tried to the jury, are inextricably linked because specifically the disrupting public service count, she was calling 911 to report a domestic violence. So all of that testimony is inextricably linked to the context of the situation and the incident that led her to call 911. And separating that out would not be fair to the State because we need to give the jury an accurate picture of what happened here.

(Tr. 303-304.)

{¶ 15} After listening to both attorneys, the trial court stated:

Thank you. So the defense objections, I understand them but they aren't overruled because how the defendant acted and his demeanor and how all these events with respect to endangering the children occurred during the struggle and that he tried to prevent her from leaving and that he had come in intoxicated and she didn't understand that. And the morning that they then argued about that situation and he said he didn't remember. Breaking her phone and all that type of thing. That's all relevant to Counts 2 through 5. And incidentally, relevant to aspects of Count 1, but not all aspects of Count 1 because Count 1 also involves information the jury doesn't have, the stipulation as to his prior convictions.

But it was not unduly dwelled upon or presented. There were — this was a very brief recitation of an event that transpired over hours and the Court finds it was not meant to sensationalize or unduly prejudice Mr. Baird but it was the most essentials that could be presented in order for this alleged victim to describe what happened and in her understanding why.

* * *

She's just trying to describe their relationship and you have the opportunity to cross-examine her and indicate to the jury she's untruthful, inaccurate, whatever it might be. But I felt that her testimony was limited in scope to the bare minimums to establish why we're here.

We didn't go back into particular days before March 16th. We didn't go back into the whole entirety. I mean, there were some brief references but it was not unduly prejudicial. It did give background as to what led her to be confused on that morning when he allegedly came in and slapped her three times and then their argument that ensued that then led to this breaking of her phone, holding her, trying to use the child kind of as a hostage, all that kind of thing.

Now, you did object about her stating that her friend — about her beeping the horn, why was she beeping the horn and all that, that's her opinion as to why the friend was beeping the horn and it had very limited prejudicial effect, if any. She is allowed to give her opinion upon why a person is acting a certain way but that's not the main part of the case is that her friend was beeping her horn to try and get her out there. The main part of the case is what was presented and then you have a chance to probe that further and discredit her.

(Tr. 304, 305-306.)

{¶ 16} Later during the trial, Officer Allison Long ("Officer Long") testified she responded to the 911 call and arrived at Page's apartment, where Page and her mother were standing outside. Officer Long spoke with Page regarding the incident that took place in the apartment. Then Officer Long testified that Baird allowed the officers access to the apartment. She stated: "He allowed us in the apartment. We wanted to speak with him outside, because his son was in the apartment and I try to prevent interactions in front of children if I can, but he wanted to be in the apartment so he let us in with him." (Tr. 342-343.)

{¶ 17} Officer Long testified that after Baird allowed the officers in the apartment, he explained the altercation that took place between him and Page. Officer Long stated:

> He said that he had gotten into a verbal altercation with the victim and that she wanted to leave with their infant child and he did not want his infant child to leave. He said that no physical altercation had taken place and that she eventually left.

(Tr. 343.)

{¶ 18} After Baird gave his statement, he was detained, and taken outside. A.J. was left in the apartment with Officer Long. Long testified that A.J. "was able to give me his name and spell it as well as give me his birthday." (Tr. 348.) Officer Long asked A.J. if he witnessed the altercation between Baird and Page. She stated:

> First and foremost, I asked if he was okay. He said he was okay. I asked him what his name was, and what his birthday was. I did that to try and assess his mental capability. He was able to spell out his name and give me his birthday. I asked him what happened. He seemed to get a little bit more nervous when he was telling me and he told me that his dad and his girlfriend were arguing. And that his dad had hit her in the chest several times.

(Tr. 350-351.)

{¶ 19} Baird's counsel objected to Officer Long's testimony regarding A.J.'s statement. He stated:

> What I would say is this is, by the alleged victim's own statement on the 911 call, it was over an hour later and this child was interviewed without a parent or without — and they were interviewed for prosecution and investigation of this case.

Beyond that, I mean, if the — my client's right to confrontation would be violated if this statement comes in. And by the Court's own statement during when you were instructing the jury, you said people — you gave the instruction that people can — two people can witness something and have different statements about what happened. And here, you know, without being able to cross-examine that child — and I have this written out — and let that in.

So I said you stated to the jury, two people can view something and they might have a different description of it. And if you're having an excited utterance and saying that the truthfulness is there because the child or the person was under duress and to compound that you say that a child is trustworthy because of their age.

(Tr. 346-347.)

{¶ 20} The trial court allowed Officer Long's testimony stating that "Declarations of children under ten years may be particularly trustworthy. I haven't heard the foundation. I don't know whether it comes in or not. I don't have the evidence that you all have through discovery. I'm waiting to hear it." (Tr. 347.)

{¶ 21} At the end of the trial, Baird's counsel moved the court for a mistrial, stating:

Your Honor, I want to move the Court for a mistrial at this time. During the State's close, [the state] ignored the admonishments of the Court that have gone on over the past few days with regard to allegations of my client intimidating this alleged victim. My client allegedly slashing the tires of the car. He pulled on the jury's heartstrings.

I think the curative instruction that you've given is insufficient. I'm not going to ask you to do it again because it's just going to call more attention to this. I think this jury has been irreparably poisoned by those remarks of other-acts evidence. I understand this isn't evidence, but you can't do it.

We've put up a wall the entire trial to make sure this stuff didn't come in and at the eleventh hour, to make a statement to the jury like that, it puts me in an untenable position. Right before I'm supposed to get up and make an argument about credibility, he says that about my client. He's put me in a position where I — compounded by the fact that he's not sitting there.

I don't think there's any other recourse but to have a mistrial at this point. I can't believe it. I'm so angry right now. I can't even tell you how angry I am right now.

(Tr. 440-441.)

{¶ 22} After the state responded that they did not understand Baird's counsel's argument, the trial court responded that the state was instructed not to bring in testimony regarding Page's slashed tires or the sugar in her gas tank. The state argued that neither they nor Page stated that Baird committed those crimes, but rather had Page testify to those facts because he was "discussing her credibility and what her interests would be in fabrication and I was saying her interests are running counter to her coming in and testifying and that should weigh in favor of her credibility, which is clear in the context of my argument." (Tr. 445.)

{¶ 23} The trial court responded to the state first and then to Baird's counsel, stating:

You have a right if the Court allows it, finds that it's relevant, probative, and not more prejudicial than probative. All right? You don't have a right to say anything unless the Court allows you under the Rules of Evidence. You're missing that point. Remember, I admonished you yesterday that the proper place for the jail calls and the contact and all that is in his next case, which involves violations of a TRO. Not this case. You just still don't get it. So you're done talking.

[Counsel], although I understand your anguish, all right, I'm not granting a mistrial. Because there's Count 1, which is being tried to the Court and I'm not influenced by this attempt to bring in things. I'm not even sure it's an attempt. It's an absence of skill by bringing them in, in my view. Okay. Complete absence of skill when there's evidence — you have a witness that's testified about how these things transpired and that evidence is uncontroverted. There's no opposing evidence to it. There's some cross-examination, but there's no opposing evidence. And a lot of this, in my view, may have been unnecessary. But I let you prosecute your case.

I'm not granting a mistrial, but I will instruct the jury, as I did, I told them to disregard some of those statements. They might be in another — they might belong in another trial. They don't belong in this trial. So I'm going to walk back here and at 11:40 we're going to go forward.

[Counsel] you will have your closing. The State has their rebuttal. I'm charging this jury.

(Tr. 447-448.)

{¶ 24} After the jury returned to the court room, the trial court spoke to the

jury, stating:

Anyway, welcome back. You heard the opening close by the State. I do want to say that some remarks were made in there that I'm going to ask you to disregard totally. There was an improper argument about tires being slashed and phone calls and other things.

You are here, ladies and gentlemen, to decide whether the child was in danger, whether there was an abduction, whether there was a disrupting public service, that being telephone, whether a cell phone was damaged.

That's what you're here for. Anything else that has gone beyond that, there were objections, the Court sustained them and I'm telling you that you must disregard that extraneous information. It's not part of this case. Okay?

But there are parts of the case that you will have relevant evidence to decide and that was your job from the beginning and it remains your job.

(Tr. 451-452.)

{¶ 25} The trial court found Baird guilty of domestic violence. The jury found Baird guilty of all counts, except the endangering children count, and he was sentenced to 30 months in prison. Baird filed this timely appeal and assigned three errors for our review:

1. The trial court erred by permitting the state to introduce evidence of other crimes, wrongs, or acts;

2. The trial court erred in denying the defendant's motion for mistrial; and

3. The trial court erred by permitting jurors to hear inadmissible hearsay evidence in violation of the constitutional right to confrontation.

## II. Evid.R. 404(B)

### A. Standard of Review

{¶ 26} "'[T]rial court decisions regarding the admissibility of other-acts evidence under Evid.R. 404(B) are evidentiary determinations that rest within the sound discretion of the trial court.'" *State v. Mills*, 8th Dist. Cuyahoga No. 110893, 2022-Ohio-4010, ¶ 53, quoting *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 22. "'Appeals of such decisions are considered by an appellate court under an abuse-of-discretion standard of review.'" *Id.* quoting *id.* "Likewise, when reviewing a trial court's decision to admit evidence pursuant to

Evid.R. 403(A), '[t]he appropriate standard of review is the abuse of discretion standard.'" *Id.*, quoting *State v. Wright*, 8th Dist. Cuyahoga No. 108026, 2019-Ohio-4460, ¶ 49. "'The trial court has broad discretion in the admission * * * of evidence and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, this court should be slow to interfere.'" *State v. Maurer*, 15 Ohio St.3d 239, 265, 473 N.E.2d 768 (1984), quoting *State* v. *Hymore*, 9 Ohio St. 2d 122, 224 N.E.2d 126 (1967). "'In order for the evidence to be deemed inadmissible, its probative value must be minimal and its prejudicial effect great [when] viewed in a light most favorable to the proponent of the evidence[.]'" (Citations omitted.) *Mills* at ¶ 53, quoting *Wright* at ¶ 50.

{¶ 27} "An abuse of discretion occurs when a court exercises its judgment in an unwarranted way regarding a matter over which it has discretionary authority." *Id.* at ¶ 54, citing *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 35. *See also State v. Acosta*, 8th Dist. Cuyahoga No. 111110, 2022-Ohio-3327, ¶ 43; *State v. Parker*, 8th Dist. Cuyahoga No. 110563, 2022-Ohio-377, ¶ 11.

### B. Law and Analysis

{¶ 28} In Baird's first assignment of error, he argues that the trial court erred by allowing Page's testimony regarding her troubles getting to court because her tires were flattened and sugar was put in her gas tank. Page then testified about Baird threatening her at the courthouse earlier in the week before the trial. Finally,

Baird contends that the trial court erred by allowing Page to testify that Baird awakened and slapped her. Baird's trial counsel did object to this testimony at trial, arguing that it was inappropriate Evid.R. 404(B) evidence, and the state argued that this testimony was within the context of the situation.

{¶ 29} Evid.R. 404(B) states:

(1) Prohibited uses. Evidence of any other crime, wrong or act is not admissible to prove the person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) Permitted uses; notice. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. The proponent of evidence to be offered under this rule shall:

(a) provide reasonable notice of any such evidence the proponent intends to introduce at trial so that an opposing party may have a fair opportunity to meet it;

(b) articulate in the notice the permitted purpose for which the proponent intends to offer the evidence, and the reasoning that supports the purpose; and

(c) do so in writing in advance of trial, or in any form during trial if the court, for good cause, excuses lack of pretrial notice.

{¶ 30} "In deciding whether to admit other acts evidence, trial courts should conduct a three-step analysis:

The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401. The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether

the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice."

*State v. Brown*, 8th Dist. Cuyahoga No. 106582, 2019-Ohio-1235, 134 N.E.3d 783, ¶ 96, quoting *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 20.

{¶ 31} Baird argues that Page's testimony regarding the vandalism of her car was prejudicial. The trial court admonished the state for this testimony, stating that it instructed the state not to bring in the testimony. The state responded that it was to demonstrate Page's credibility to the jury and that the state did not accuse Baird of vandalizing Page's car. In response to Baird's objection, the trial court gave a curative instruction to the jury, stating, in part:

I do want to say that some remarks were made in there that I'm going to ask you to disregard totally. There was an improper argument about tires being slashed and phone calls and other things.

You are here, ladies and gentlemen, to decide whether the child was in danger, whether there was an abduction, whether there was a disrupting public service, that being telephone, whether a cell phone was damaged.

That's what you're here for.

(Tr. 451.)

{¶ 32} "'A jury is presumed to follow the instructions, including curative instruction, given it by a judge.'" *State v. Willis*, 8th Dist. Cuyahoga No. 99735, 2014-Ohio-114, ¶ 36, quoting *State v. Garner*, 74 Ohio St.3d 49, 59, 656 N.E.2d 623

(1995). Baird has not demonstrated that the jury did not following the trial court's instructions. Thus, Page's testimony constitutes harmless error. Crim.R. 52(A) defines harmless error in the context of criminal cases and provides: "Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded."

{¶ 33} "Under the harmless-error standard of review, 'the government bears the burden of demonstrating that the error did not affect the substantial rights of the defendant.'" (Emphasis omitted.) *State v. McCully*, 8th Dist. Cuyahoga No. 107888, 2020-Ohio-659, ¶ 17, quoting *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 15, citing *United States v. Olano*, 507 U.S. 725, 741, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). "In most cases, in order to be viewed as 'affecting substantial rights,' "'the error must have been prejudicial: It must have affected the outcome of the [trial] court proceedings.'"" *Id.*, quoting *State v. Fisher*, 99 Ohio St.3d 127, 2003-Ohio-2761, 789 N.E.2d 222, ¶ 7, quoting *United States v. Olano*, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

{¶ 34} Accordingly, Crim.R. 52(A) asks whether the rights affected are "substantial" and, if so, whether a defendant has suffered any prejudice as a result. *Id.*, citing *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153, ¶ 24-25. "If the government does not satisfy its burden, the appellate court has no discretion to disregard the error; rather, the court must reverse the conviction." *Id.*, citing *Perry* at ¶ 15. The state elicited testimony from Page that her car was

vandalized before coming to testify in this trial. Although Page did not state that Baird was responsible, the testimony was inappropriate. Page also testified as to Baird threatening her for coming to court. However, we find that Baird has not demonstrated that Page's testimony prejudiced him or that the jury relied on that testimony in their finding of guilt.

{¶ 35} Baird also contends that Page's testimony regarding Baird's past behavior of drinking and domestic violence was prejudicial. He argues that Page testifying to the events regarding Baird slapping her in the middle of night, his past aggressive and violent behavior, and Baird damaging her phone were inappropriate 404(B) evidence. The state argued that all of this testimony was essential and linked to the context of the situation that led Page to call 911. Page's testimony regarding Baird damaging her phone was to provide evidence for the criminal damaging charge of the instant case, not the domestic violence case.

{¶ 36} We determine that Baird's argument is misplaced. "Generally, prior bad acts by a defendant against the same victim are admissible in domestic violence cases to prove the defendant's intent." *State v. Clay*, 181 Ohio App.3d 563, 2009-Ohio-1235, 910 N.E.2d 14 (8th Dist.), ¶ 35, citing *State v. Blonski*, 125 Ohio App.3d 103, 113, 707 N.E.2d 1168 (1997); *State v. Johnson*, 73 Ohio Misc.2d 1, 3, 657 N.E.2d 383 (1994). "When using a defendant's prior acts to show his intent, 'the offense for which the defendant is being tried and the other act must have occurred reasonably

near to each other and a similar scheme, plan or system must have been utilized to commit the offense at issue and the other offenses.'" *Id.*, quoting *Blonski* at 113.

{¶ 37} Baird argues that the state did not have to demonstrate why Page wanted to leave the home, just that she was restrained. However, his argument is misplaced because Page's testimony was provided for context as to why Page wanted to leave the home. Baird's prior acts were used to show his intent and these acts were linked in the same occurrence. Moreover, even without these comments regarding past abuse of which Baird now complains, the state provided substantial evidence of Baird's guilt on the offenses charged. *See State v. Hilton*, 8th Dist. Cuyahoga No. 89220, 2008-Ohio-3010. Thus, we find these comments do not constitute plain error because the outcome of the trial would not have been different without them. *See State v. Wilcox*, 8th Dist. Cuyahoga No. 96079, 2011-Ohio-5388, ¶ 12.

{¶ 38} Therefore, Baird's first assignment of error is overruled.

## III.  Motion for Mistrial

### A.  Standard of Review

{¶ 39} "'The standard of review for evaluating the trial court's decision on a motion for a mistrial is an abuse of discretion.'" *State v. Sheline*, 8th Dist. Cuyahoga No. 106649, 2019-Ohio-528, ¶ 160, quoting *State v. Taylor*, 8th Dist. Cuyahoga No. 95041, 2011-Ohio-839, ¶ 25.

"A mistrial should not be ordered in a criminal case merely because some error or irregularity has occurred, unless the substantial rights of the accused or the prosecution are adversely affected, and this determination is made at the discretion of the trial court. The granting of a mistrial is only necessary when a fair trial is no longer possible. Thus, the essential inquiry on a motion for mistrial is whether the substantial rights of the accused are adversely or materially affected."

(Citations omitted.) *Id.*, quoting *Taylor* at ¶ 26.

### B.    Law and Analysis

{¶ 40} In Baird's second assignment of error, he argues that the trial court erred by denying the defendant's motion for mistrial. At trial, Baird's counsel moved the court for a mistrial, stating:

> Your Honor, I want to move the Court for a mistrial at this time. During the State's close, [the state] ignored the admonishments of the Court that have gone on over the past few days with regard to allegations of my client intimidating this alleged victim. My client allegedly slashing the tires of the car. He pulled on the jury's heartstrings.
>
> I think the curative instruction that you've given is insufficient. I'm not going to ask you to do it again because it's just going to call more attention to this. I think this jury has been irreparably poisoned by those remarks of other-acts evidence. I understand this isn't evidence, but you can't do it.
>
> We've put up a wall the entire trial to make sure this stuff didn't come in and at the eleventh hour, to make a statement to the jury like that, it puts me in an untenable position. Right before I'm supposed to get up and make an argument about credibility, he says that about my client. He's put me in a position where I — compounded by the fact that he's not sitting there.

I don't think there's any other recourse but to have a mistrial at this point. I can't believe it. I'm so angry right now. I can't even tell you how angry I am right now.

(Tr. 440-441.)

{¶ 41} Additionally, Baird contends that the curative instruction given by the trial court failed to remedy the prejudice to Baird. In the previous assignment of error, we stated that "'[a] jury is presumed to follow the instructions, including curative instruction, given it by a judge.'" *Willis*, 8th Dist. Cuyahoga No. 99735, 2014-Ohio-114, at ¶ 36, quoting *Garner*, 74 Ohio St.3d at 59, 656 N.E.2d 623. As we previously determined, Baird has not demonstrated that he was prejudiced by the testimony or that the jury did not follow the trial court's instructions. Additionally, Baird was found not guilty of child endangering, which demonstrates that the jury considered all offenses and disregarded others.

{¶ 42} "In determining whether a mistrial is necessary, the exercise of 'sound discretion' generally requires that a trial court (1) allow both parties to state their positions on the issue, (2) consider their competing interests, and (3) explore reasonable alternatives, if any, before declaring a mistrial." *State v. Bogan*, 8th Dist. Cuyahoga No. 106183, 2018-Ohio-4211, ¶ 25, citing *N. Olmsted v. Himes*, 8th Dist. Cuyahoga Nos. 84076 and 84078, 2004-Ohio-4241, ¶ 44. "A trial court must act 'rationally, responsibly, and deliberately' in determining whether to declare a mistrial." *Id.*, quoting *State v. Gunnell*, 132 Ohio St.3d 442, 2012-Ohio-3236, ¶ 33. "However, a trial court's failure to make an explicit finding of 'manifest necessity'

does not render a mistrial declaration invalid, as long as the record provides sufficient justification for the ruling." *Id.*, citing *Arizona v. Washington*, 434 U.S. 497, 516-517, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978).

{¶ 43} The record reflects that the trial court heard competing positions from the state and defense. After consideration, the trial court decided that a curative instruction was a reasonable alternative to declaring a mistrial. "This court has explained that '[c]urative instructions have been recognized as an effective means of remedying errors or irregularities that occur during trial.'" *State v. Solomon*, 8th Dist. Cuyahoga No. 109535, 2021-Ohio-940, ¶ 94, quoting *State v. Williams*, 8th Dist. Cuyahoga No. 94242, 2010-Ohio-5484, ¶ 21.

{¶ 44} For the foregoing reasons, we find that Baird has failed to provide clear and affirmative evidence demonstrating that Page's testimony improperly influenced the jury, materially affected the merits of the case, or deprived Baird of a fair trial. *See State v. Williams*, 8th Dist. Cuyahoga No. 106266, 2018-Ohio-3368, ¶ 41. Therefore, we find no basis upon which to conclude that the trial court's judgment denying defense counsel's motion for a mistrial and determination that a curative instruction to the jury was more appropriate was arbitrary, unreasonable, or unconscionable.

{¶ 45} Baird's second assignment of error is overruled.

## IV. Hearsay Testimony

### A. Standard of Review

{¶ 46} "A trial court has broad discretion regarding the admission of evidence, including whether evidence constitutes hearsay and whether it is admissible hearsay." *State v. Wingfield*, 8th Dist. Cuyahoga No. 107196, 2019-Ohio-1644, ¶ 29, citing *Solon v. Woods*, 8th Dist. Cuyahoga No. 100916, 2014-Ohio-5425, ¶ 10. "We therefore will not disturb a trial court's decision regarding the admissibility of hearsay evidence absent an abuse of discretion and the defendant suffers material prejudice." *Id.*, citing *Maurer*, 15 Ohio St.3d at 265, 473 N.E.2d 768.

## B. Law and Analysis

{¶ 47} In Baird's final assignment of error, he argues that the trial court erred by permitting jurors to hear A.J.'s statements to Officer Long. Baird contends that by permitting this hearsay testimony, it created a defect on the trial because A.J. was never cross-examined. Essentially, Baird argues that Officer Long's testimony violated his constitutional right to confrontation. The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him."

> With respect to hearsay, the United State Supreme Court has held that the Confrontation Clause prohibits the admission of a testimonial, out-of-court statement made by a witness unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness.

*State v. Craft*, 12th Dist. Butler No. CA2006-06-145, 2007-Ohio-4116, ¶ 50, citing *Crawford v. Washington*, 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

{¶ 48} The state argues that Officer Long's testimony regarding what A.J. statements were is not admissible hearsay, but rather a child's declaration as an excited utterance. Officer Long testified that "I asked him what happened. He seemed to get a little bit more nervous when he was telling me and he told me that his dad and his girlfriend were arguing. And that his dad had hit her in the chest several times." (Tr. 350-351.) Before Officer Long's testimony concerning what A.J. revealed to her, Baird's trial counsel objected and stated:

> What I would say is this is, by the alleged victim's own statement on the 911 call, it was over an hour later and this child was interviewed without a parent or without — and they were interviewed for prosecution and investigation of this case. Beyond that, I mean, if the — my client's right to confrontation would be violated if this statement comes in. And by the Court's own statement during when you were instructing the jury, you said people — you gave the instruction that people can – two people can witness something and have different statements about what happened. And here, you know, without being able to cross-examine that child — and I have this written out — and let that in. So I said you stated to the jury, two people can view something and they might have a different description of it. And if you're having an excited utterance and saying that the truthfulness is there because the child or the person was under duress and to compound that you say that a child is trustworthy because of their age.

(Tr. 346-347.)

{¶ 49} "An excited utterance is defined as a 'statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.'" *State v. Carstaphen*, 8th Dist. Cuyahoga No. 110906, 2022-Ohio-3129, ¶ 32, quoting Evid.R. 803(2). Baird argues that

because A.J.'s statements were made about an hour after the initial confrontation, they do not qualify as excited utterances.

{¶ 50} "'There is no *per se* amount of time after which a statement can no longer be considered to be an excited utterance. The central requirements are that the statement must be made while the declarant is still under the stress of the event and the statement may *not* be a result of reflective thought.'" (Emphasis sic.) *State v. Sims*, 12th Dist. Butler No. CA2007-11-300, 2009-Ohio-550, ¶ 14, quoting *State v. Taylor*, 66 Ohio St.3d 295, 303, 612 N.E.2d 316 (1993). "'[T]he passage of time between the statement and the event is relevant but not dispositive of the question.'" *Id.* at i*d.* A.J. witnessed Baird striking Page, the police coming into his home, and then the police arresting his father. From these facts, it demonstrates that A.J. was under the stress caused by the event when he told Officer Long the details of the altercation.

{¶ 51} "The Supreme Court of Ohio has made clear that, to be an excited utterance, the statement need not be strictly contemporaneous with the startling event." *Carstaphen* at ¶ 35, citing *State v. Duncan*, 53 Ohio St.2d 215, 373 N.E.2d 1234 (1978), paragraph one of the syllabus. "'"[E]ach case must be decided on its own circumstances, since it is patently futile to attempt to formulate an inelastic rule delimiting the time limits within which an oral utterance must be made in order that it be termed a spontaneous exclamation."'" *Id.*, quoting *Taylor* at 303, quoting *Duncan* at 219. *See also In re C.C.*, 8th Dist. Cuyahoga Nos. 88320 and 88321,

2007-Ohio-2226 (finding an excited utterance even though 27 days passed between the event and the statement); *State v. Duke*, 8th Dist. Cuyahoga No. 52604, 1988 Ohio App. LEXIS 3466 (Aug. 25, 1988) (finding an excited utterance when the statement was made ten days following an incident).

{¶ 52} The facts in this instant case are analogous to the facts in *Cleveland v. Taylor*, 8th Dist. Cuyahoga No. 109371, 2021-Ohio-584. In *Taylor*, after a domestic violence incident between mother and father, mother testified at trial and repeated statements her minor child made to her regarding the incident. Mother testified,

> I grabbed my son which I had a talk to in the room because he was under his covers in tears crying saying that his daddy didn't love him. And he proceeded to tell me that [appellant] grabbed him by his arm, threw him on the ground and told him that he is not a part of his family, he does not have f[***] in his family.

*Id.* at ¶ 19.

{¶ 53} On appeal, father, the appellant, argued that the trial court erred by allowing mother to testify, over defense counsel's objection, about the son's out-of-court statements. Appellant contended that the trial court's ruling violated his constitutional right to confrontation. The city, however, argued that the statements were admissible as an excited utterance. The court stated that "[t]he record reflects that the son was still under the stress of excitement caused by appellant's discovery on his cell phone." *Id.* at ¶ 58. This court held that there is "no basis upon which to conclude that the trial court abused its discretion in permitting [mother] to testify about the son's statements. *Id.* at ¶ 54.

{¶ 54} As in our instant case, the appellant in *Taylor* argued that the child's statements were not admissible under the excited utterance exception to the hearsay rule because they were made after appellant left the scene.

> "Evid.R. 803 sets forth certain exceptions to the rule against hearsay, including the "excited utterance" exception. Evid.R. 803(2). In order for a statement to be admissible as an excited utterance, four prerequisites must be satisfied: (a) the occurrence of an event startling enough to produce a nervous excitement in the declarant that stills his reflexive faculties so that his declarations are spontaneous and the unreflective and sincere expressions of his impressions and beliefs; (b) a statement made while still under the stress of excitement caused by the event; (c) a statement related to the startling event; and (d) the declarant had an opportunity to personally observe the matters in his declaration. *State v. Taylor*, 66 Ohio St.3d 295, 300-301, 612 N.E.2d 316 (1993); *State v. Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, 984 N.E.2d 948, ¶ 166."

*Id*. at ¶ 53, quoting *State v. Renode*, 8th Dist. Cuyahoga No. 109171, 2020-Ohio-5430, ¶ 27.

{¶ 55} As in *Taylor*, 66 Ohio St.3d 295, 303, 612 N.E.2d 316, in our instant case, A.J.'s statements to Officer Long were not testimonial.

> In *Crawford*, 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177, the United States Supreme Court held that the Confrontation Clause of the Sixth Amendment to the United States Constitution permits testimonial statements of witnesses absent from trial where the declarant is unavailable, only where the defendant has had a prior opportunity to cross-examine. Testimonial statements include statements "that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Id*. at 52. *See also Davis v. Washington*, 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of interrogation is to enable police assistance to

meet an ongoing emergency." *Davis* at 823. *See also State v. Eicholtz,* 2d Dist. Clark No. 2012-CA-7, 2013-Ohio-302, ¶ 26.

*Id.* at ¶ 50, quoting *Renode* at ¶ 24.

{¶ 56} A.J.'s statements were made during Officer Long's interrogation to enable the police to meet an ongoing emergency. A.J.'s statements would not lead an objective witness to reasonably believe that his statements would be available for use at a later trial. Therefore, A.J. statements were not testimonial.

{¶ 57} As the court in *Taylor* previously found, we cannot conclude that A.J.'s statements were inadmissible hearsay. The record reflects that A.J. was still under that stress and excitement of watching his father and Page engage in conflict and witnessing police officers enter his home and detain his father. Thus, the trial court did not err or abuse its discretion in allowing Officer Long to testify as to the statements A.J. made to her.

{¶ 58} Therefore, Baird's third assignment of error is overruled.

{¶ 59} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, ADMINISTRATIVE JUDGE

EILEEN A. GALLAGHER, J., CONCURS;
SEAN A. GALLAGHER, P.J., CONCURS IN JUDGMENT ONLY (with separate opinion)

SEAN C. GALLAGHER, P.J., CONCURRING IN JUDGMENT ONLY:

{¶ 60} I respectfully concur in judgment only. I am unable to fully agree with the analysis provided by the majority.

{¶ 61} This is a case in which the charge of domestic violence was tried to the bench and the remaining charges were tried to a jury. The charges presented to the jury included endangering children, abduction, disrupting public service, and criminal damaging or endangering. Although appellant sought to prevent the jury from hearing evidence pertaining to the domestic-violence charge, as the Supreme Court of Ohio has held, "'evidence of other crimes may be presented when "they are so blended or connected with the one on trial as that proof of one incidentally involves the other; or explains the circumstances thereof; or tends logically to prove any element of the crime charged."'" *State v. Wilkinson*, 64 Ohio St.2d 308, 317, 415 N.E.2d 261 (1980), quoting *United States v. Turner*, 423 F.2d 481, 483-484 (7th Cir.1970); *accord State v. Roe*, 41 Ohio St.3d 18, 23, 535 N.E.2d 1351 (1989); *see also*

*State v. Evans*, 8th Dist. Cuyahoga No. 108648, 2020-Ohio-3968, ¶ 108. Likewise, "'[t]he jury is entitled to know the "setting" of a case. It cannot be expected to make its decision in a void — without knowledge of the time, place and circumstances of the acts which form the basis of the charge.'" *Id.*, quoting *United States v. Roberts*, 548 F.2d 665, 667 (6th Cir.1977), *cert. denied* 431 U.S. 931, 97 S.Ct. 2636, 53 L.Ed.2d 246; *see also State v. David*, 1st Dist. Hamilton No. C-210227, 2021-Ohio-4004, ¶ 14-15.

{¶ 62} Otherwise put, evidence is admissible outside the parameters of Evid.R. 404(B) where the evidence is intrinsic, as opposed to extrinsic, to the crime being charged, i.e., the acts form part of the immediate background of the crime charged, or explain the circumstances thereof, or tend to logically prove an element of the crime charged. *See State v. Evans*, 8th Dist. Cuyahoga No. 108648, 2020-Ohio-3968, ¶ 108-109; *State v. Jones*, 2018-Ohio-498, 105 N.E.3d 702, ¶ 140 (8th Dist.); *Cleveland v. Lowery*, 8th Dist. Cuyahoga No. 103722, 2016-Ohio-5626, ¶ 22; *State v. Johnson*, 8th Dist. Cuyahoga No. 83317, 2004-Ohio-2698, ¶ 27. Such evidence is "necessary to give a complete picture of what occurred." *Wilkinson* at ¶ 318.

{¶ 63} In this matter, the crimes were inextricably intertwined and the facts of the domestic violence explained the circumstances that formed the basis and foundation for the other crimes. For instance, the offense of abduction required that appellant without privilege to do so, *knowingly by force or threat,* restrained the

liberty of Page *under circumstances that created a risk of physical harm to Page or placed her in fear*. *See* R.C. 2905.02(A)(2). Evidence regarding the domestic violence provided essential background and explained the circumstances of the abduction charge and the other offenses. Although appellant argues that the state separately elicited testimony tending to show restraint as Baird and Page fought over who would take their child, the domestic violence was nonetheless part and parcel of the abduction offense.

{¶ 64} To the extent that improper testimony was admitted regarding the vandalism to Page's vehicle and Baird's statements to her at the courthouse, and the assistant prosecuting attorney commented on the same during his closing argument, the trial court provided a curative instruction and the record shows no prejudice occurred. It is presumed that the jury followed the curative instruction. *State v. Robinson*, 8th Dist. Cuyahoga No. 110883, 2022-Ohio-1940, ¶ 35, citing *State v. Treesh*, 90 Ohio St.3d 460, 480, 739 N.E.2d 749 (2001). Nothing in the record herein rebuts that presumption. In fact, appellant was acquitted on the charge of endangering children. It cannot be said that the error was not harmless beyond a reasonable doubt, and the remaining evidence established appellant's guilt beyond a reasonable doubt of the other offenses. The state demonstrated appellant's substantial rights were not abridged. The error was harmless.

{¶ 65} Finally, I agree with the majority that there was no violation of the Confrontation Clause and find no abuse of discretion by the trial court's admission

of the five-year-old's statement as an excited utterance. To the extent any other evidence was improperly introduced, I likewise would find the error to be harmless.

{¶ 66} Although I am troubled by the state's rather carefree approach to the introduction of some of the evidence offered in this case, I am unable to find that reversible error occurred. Appellant "'is entitled to a fair trial but not a perfect one.'" *State v. Walker*, 55 Ohio St.2d 208, 216, 378 N.E.2d 1049 (1978), quoting *Lutwak v. United States*, 344 U.S. 604, 619, 73 S.Ct. 481, 97 L.Ed. 593 (1953). The claimed errors in this case are susceptible to harmless-error review and did not prejudice the substantial rights of the defendant. Additionally, I find the trial court did not abuse its discretion in denying appellant's request for a mistrial.

{¶ 67} For these reasons, I would affirm the judgment of the trial court.